IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| DONALD BROUSSARD | * | CIVIL ACTION NO. 05-0574 |
| VERSUS | * | JUDGE JAMES |
| LOUISIANA STATE POLICE, ET AL | * | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion for Summary Judgment (Doc. #22) filed by Defendants, William R. Woodard, III[1] ("Woodard") and Harvey Bonner ("Bonner"). The motion is opposed. For the reasons stated below, it is recommended that Defendants' Motion for Summary Judgment (Doc. #22) be **DENIED**.

## FACTS AND BACKGROUND

On April 2, 2004, at approximately 10:00 p.m., Plaintiff, Donald Broussard ("Broussard"), was traveling southbound on U.S. Highway 165 Business in a 1988 Ford pickup truck. At the same time, Senior Louisiana State Trooper Kirk Knowles ("Knowles") was pulled off onto the shoulder of U.S. Highway 165 Business, near E.A. Conway Memorial Hospital, waiting to make a U-turn. As Knowles was stopped on the shoulder of Highway 165 Business, Broussard passed him and Knowles observed that the Ford pickup truck had a temporary tag in the back window, but Knowles did not see an expiration date on the tag.[2] Knowles pulled out

---

[1]The Defendant has been referred to as "Woodard" and "Woodward" in both the Plaintiff's and Defendants' filings. The Court will use the "Woodard" spelling, as is found in the case caption and the Complaint; however, the Court notes that the correct spelling is unclear.

[2]Broussard had purchased the 1988 Ford pickup from Columbia Motors on February 6, 2004. Columbia Motors had completed temporary tag 8731664 with an expiration date of April 6, 2004. On the date of the incident, Broussard had a valid 60-day registration posted in the rear

onto Highway 165 Business behind Broussard and activated his emergency lights. Broussard pulled his vehicle to the shoulder of the road in front of E.A. Conway Memorial Hospital. Knowles pulled in behind Broussard's vehicle and exited his vehicle to approach Broussard's vehicle. Before Knowles was able to approach Broussard, Broussard accelerated his vehicle and left the scene. Knowles returned to his patrol car and began pursuing Broussard. In addition, Knowles radioed Louisiana State Troop F to advise that a pursuit had ensued. Troopers Woodard, Bonner, and Cox heard Knowles' radio transmission and began to travel to the location of Broussard and Knowles to offer their assistance.

Knowles pursued Broussard for another 200 yards until Broussard again pulled his vehicle to the shoulder of Highway 165 Business. Knowles radioed to Troop F that Broussard had stopped his vehicle. However, as Knowles exited his patrol car, Broussard again accelerated his truck and fled the scene. Knowles returned to his patrol car and radioed to Troop F to advise that Broussard fled again and that he was continuing pursuit southbound on Highway 165 Business. Broussard made a right turn onto Highway 165 from Highway 165 Business and again pulled over onto the shoulder of the road. Knowles pulled his patrol car behind Broussard's truck, but before he was able to exit his car, Broussard again accelerated and fled the scene. As the pursuit approached McHenry Gin Road, Broussard once again pulled over onto the shoulder of the road. At this point, Knowles positioned the front of his patrol car at Broussard's truck door. Broussard accelerated and turned westbound onto McHenry Gin Road, which is a dead-end street. Knowles continued to pursue Broussard. As the pursuit approached the dead end of McHenry Gin Road, Broussard left the road and accelerated his truck up the grassy embankment of the Ouachita River levee. Knowles followed Broussard.

---

window of the pickup; however, the ink on the temporary tag had faded.

As Knowles was pursuing Broussard, Troopers Cox, Bonner, and Woodard joined Deputy David Crain, of the Ouachita Parish Sheriff's Department, on the Logtown School Road, which is a paved road on top of the Ouachita River levee.  Deputy Marvin McFarland, also of the Ouachita Parish Sheriff's Department, followed Troopers Cox, Bonner, and Woodard to Logtown School Road.  Deputy Crain was positioned on Logtown School Road facing the direction that Broussard and Knowles were headed.  Troopers Cox, Bonner, Woodard, and Deputy McFarland, in that order, positioned themselves along the road and formed a roadblock behind Deputy Crain.  Within seconds of Cox, Bonner, Woodard, and McFarland's stopping their patrol cars, Broussard passed them on the embankment of the levee.  As Broussard approached the patrol cars, Bonner was forced to "back-peddle" and position himself behind this patrol car to take cover.  As Bonner was taking cover, he fired one round at Broussard's front driver's tire with his state issued shotgun in an attempt to stop Broussard's vehicle.  Woodard, whose patrol car was parked next in line behind Bonner's car, also retreated from the left side of his car to behind his car, away from Broussard's approaching truck.  Woodard fired three rounds into Broussard's vehicle from his state issued pistol.  As the third shot was fired, Broussard slumped over in his vehicle; Broussard's truck veered to the right and proceeded down the levee embankment and came to rest in the woods at the bottom of the levee.  Broussard then exited his truck and fled on foot towards the Ouachita River.  Officers entered the wooded area attempting to locate Broussard.  Approximately thirty minutes later, Broussard was found lying partially in the river, with his upper torso lying on the bank.

Broussard had sustained two gunshot wounds, one in the left thigh area and one in the left mid-chest area.  Emergency services were immediately called and Broussard was transported to E. A. Conway Memorial Hospital, where he was treated until released to the custody of the

Ouachita Correction Center. A subsequent toxicology report indicated that Broussard tested positive for "a major metabolite of tetrahydrocannabinol, 11-nor-delta-9-THC-9-carboxylic acid, Cocaine, Methylecgonine, and Benzoylecgonine." As a result of this incident, Broussard entered a guilty plea to DWI 1st offense and flight from an officer, both misdemeanors.

Broussard filed the current suit against the Louisiana State Police, Trooper Woodard, and Trooper Bonner. In his complaint, Broussard alleged claims under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, under 42 U.S.C. § 1983, and state tort law claims for negligence, assault, and battery. Broussard's § 1983 claims against the Louisiana State Police and claims against Woodard and Bonner, in their official capacities, have been dismissed with prejudice. The only remaining claims are those against Woodard and Bonner in their individual capacities under § 1983 and state tort law.

Defendants have filed the Motion for Summary Judgment currently before this Court. Defendants contend that the claims against them should be dismissed on the grounds of qualified immunity. Defendants argue that they discharged their firearms to divert Broussard because they reasonably believed that their fellow officers were under an immediate threat of death or serious bodily injury. Broussard opposes the Motion for Summary Judgment, arguing that it is heavily disputed whether the officers had a reasonable belief of a threat of death or serious bodily injury, and therefore that a question of material fact remains.

## LAW AND ANALYSIS

**Summary Judgment Standard**

Summary judgment is appropriate when the evidence before the Court shows that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a

matter of law. F.R.C.P. Rule 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" under this standard if the non-moving party has presented sufficient evidence that a reasonable jury could return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden in summary judgment and must demonstrate through portions of the pleadings, depositions, answers to interrogatories, admissions and/or affidavits that no genuine issue of material fact exists. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has successfully demonstrated the absence of a genuine issue of material fact, the burden shifts to the non-moving party to show the opposite. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In doing so, the non-moving party may not merely rely on the allegations and conclusions contained within the pleadings; rather, he "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). Furthermore, these specific facts must be shown through something more than "some metaphysical doubt as to the material facts, by conclusory unsubstantiated allegations, or by a mere scintilla of evidence." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Ultimately, however, the court must resolve all doubts against the moving party and draw any reasonable inferences raised by the evidence in favor of the non-moving party. *See Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 507 (5th Cir. 1999).

Because this case arises in the posture of a Motion for Summary Judgment, the Court is required to view all facts and draw all reasonable inferences in favor of Broussard, the non-moving party. *Brousseau v. Haugen*, 543 U.S. 194, 195 (2004). Although the courts have stated that it is preferable to resolve questions of qualified immunity at the earliest possible stage of

litigation, a Motion for Summary Judgment on the issue of qualified immunity must be denied if a dispute exists as to underlying facts which are material to the question of whether the officer's conduct was objectively reasonable. *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir.2004). This Court finds that there are genuine issues of material fact that survive summary judgment and should be determined by a jury.

Broussard testified that he was not trying to run over an officer or hurt anyone. He thought he was far enough off the road. (Broussard Dep. pg. 98-99). Deputy Crain testified that Broussard made a valid attempt to go around him (in the roadblock) and that he did not shoot at Broussard because he was not in fear. (Crain Dep. pg. 8). Trooper Cox also testified that she was not in fear for her life when Broussard passed her vehicle. (Cox Dep. pg. 25).

Plaintiff also argues that Broussard was heading away from Woodard when he fired his gun. Plaintiff's argument is based on the measurement map of the scene made by Trooper Bobby Brinkerhoff, which shows that the oil trail left by Broussard's truck was three feet two inches from Bonner's vehicle and three feet five inches from Woodard's vehicle. Plaintiff also relies on photographs depicting the bullet holes in the driver's door of Broussard's vehicle. Plaintiff argues that the angle of entry of the bullets show that the second shot fired by Woodard was fired when Broussard's position was even with Woodard's and the third shot fired was fired after Broussard had passed Woodard.

At the time of this incident, Broussard's identity was not known and he was only suspected of committing a misdemeanor traffic offense. There is no indication in the record before this court that Broussard endangered any civilian traffic during the pursuit or that Broussard was traveling above the posted speed limit. Thus, questions of fact remain as to whether the Defendants' conduct was objectively reasonable. Therefore, it is recommended that

6

Defendants' Motion for Summary Judgment (Doc. #22) be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 20th day of September, 2006.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE