RECEIVED
IN MONROE, LA
NOV 2 0 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| DONALD BROUSSARD | CIV. ACTION NO. 05-0574 |
| VERSUS | JUDGE ROBERT G. JAMES |
| THE LOUISIANA STATE POLICE, TROOPER WILLIAM R. WOODARD, III, AND TROOPER HARVEY BONNER | MAG. JUDGE KAREN L. HAYES |

## RULING

Plaintiff Donald Broussard ("Plaintiff" or "Broussard") brought this lawsuit against Defendants the Louisiana State Police, Trooper William R. Woodard, III ("Woodard"), and Trooper Harvey Bonner ("Bonner"), asserting that he was subjected to excessive force in violation of 42 U.S.C. § 1983. Plaintiff also brought state law claims against Woodard and Bonner for negligence, assault, battery, excessive use of force, and a violation of Louisiana Code of Criminal Procedure article 220. Broussard's claims against the Louisiana State Police and his Section 1983 claims against Woodard and Bonner in their official capacities were dismissed by the Court's August 10, 2005 Judgment. However, Broussard's state law and individual capacity Section 1983 claims against Woodard and Bonner remain.

Pending before the Court is a Motion for Summary Judgment [Doc. No. 22] filed by Defendants. Defendants contend that Plaintiff has no cause of action against Bonner under Section 1983 because Plaintiff suffered no injury, and he has no cause of action under state law because he cannot prove causation. They further contend that both Defendants are entitled to

1

summary judgment on all claims on the basis of qualified immunity.

On September 20, 2006, Magistrate Judge Karen L. Hayes issued a Report and Recommendation [Doc. No. 29] in which she recommends that the Court deny Defendants' Motion for Summary Judgment on the basis that there are genuine issues of material fact for trial as to whether Defendants' conduct was "objectively reasonable."

Defendants timely filed their Objections [Doc. No. 34] to the Report and Recommendation. Broussard timely filed his Response to Defendants' Objections [Doc. No. 37].

For the following reasons, the Court ADOPTS IN PART and DECLINES TO ADOPT IN PART the Report and Recommendation of Magistrate Judge Hayes.

## I. Facts

The Report and Recommendation of Magistrate Judge Hayes accurately recounts the pertinent facts in this matter. The Court ADOPTS that portion of her Report and Recommendation and incorporates her statement of facts by reference. [Doc. No. 29, pp. 1-4].[1]

## II. Law and Analysis

### A. Claims Against Bonner

In their Motion for Summary Judgment, Defendants contend that Plaintiff cannot assert a cause of action against Bonner under Section 1983 because he suffered no injury as a result of Bonner's actions. Plaintiff has not responded to this argument in any of his memoranda before the Court.

A plaintiff who asserts an excessive force claim under Section 1983 must allege "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the

---

[1] As set forth below, the Court has considered some additional evidence not addressed by Magistrate Judge Hayes in her Report and Recommendation.

need; and the excessiveness of which was (3) objectively unreasonable." *Spann v. Rainey*, 987 F.2d 1110, 1115 (5th Cir. 1993).

A review of Plaintiff's Complaint shows that the injuries he alleges are all related to his shooting. While it may not have been clear to Plaintiff at the time he prepared his Complaint who actually shot him, it is now undisputed that Woodard fired the shots that actually struck Plaintiff. The one shot fired by Bonner struck the dirt and caused no injury to Plaintiff.

Accordingly, the Court need not engage in a constitutional analysis of the claims against Bonner. Defendants' Motion for Summary Judgment with regard to the claims against Bonner is GRANTED. However, the Court's decision is subject to reconsideration should Plaintiff provide further briefing on this issue within ten (10) business days of the date the accompanying Judgment is filed.

**B.     Qualified Immunity Under Section 1983**

There is no dispute that Plaintiff suffered injuries as a result of the deadly force used by Defendant Woodard. However, Defendants contend that Woodard is entitled to qualified immunity for his actions.

In *Brosseau v. Haugen*, 543 U.S. 194 (2004) (per curiam), the Supreme Court addressed the analysis to be applied when a defendant asserts a defense of qualified immunity. The *Brosseau* case came before the Supreme Court after the Ninth Circuit Court of Appeals reversed summary judgment in favor of a police officer, finding that the plaintiff's Fourth Amendment right to be free from excessive force had been violated and that the police officer was not entitled to qualified immunity when the right was clearly established.

In that case, the plaintiff, Kenneth Haugen ("Haugen"), brought suit against the police

3

officer, Rochelle Brosseau ("Brosseau"), for use of excessive force in violation of Section 1983 after she shot him in the back as he was attempting to flee in his vehicle. On the day before the incident, Haugen's "former crime partner," Glen Tamburello ("Tamburello"), went to the police station to report that Haugen had stolen his tools. Brosseau learned that there was an outstanding no-bail warrant for Haugen for drug and other offenses. *Id.* at 195.

The next day, Tamburello and a friend drove to Haugen's mother's house after learning that Haugen was there. A fight ensued, and a neighbor called 911. When Brosseau arrived, Tamburello and his friend were trying to get Haugen into the truck with them. Brosseau's arrival created a distraction, and Haugen ran. *Id.* at 195-96.

Brosseau requested assistance, and two other officers arrived with a K-9. During the 30-45 minute search, Tamburello and his friend were instructed to remain in their truck, and Haugen's girlfriend and her 3-year-old daughter were instructed to remain in their car. The vehicles were parked in close proximity to Haugen's jeep in his mother's driveway. During the chase, Haugen eventually returned to his mother's driveway. With Brosseau in close pursuit, he jumped into his jeep and locked the door. Brosseau believed he was retrieving a weapon. She pointed her gun at him and told him to get out. He ignored her and looked for the keys. She hit his window with her gun until it shattered, attempted to grab the keys, and then struck him on the head with her gun. *Id.* at 196.

Despite Brosseau's actions, Haugen started the jeep and began to move it. Brosseau fired one shot in the back window, hitting Haugen in the back. *Id.* at 196-97. She shot Haugen because she was "'fearful for the other officers on foot who' she 'believed were in the immediate area,' and 'for the occupied vehicles in' Haugen's 'path and for any other citizens who might be

4

in the area.'" *Id.* at 197 (citation omitted).

Haugen drove half a block before collapsing, but survived the shooting and brought suit against Brosseau. *Id.* Brosseau contended that she was entitled to qualified immunity.

In reviewing a police officer's claim of qualified immunity, the Supreme Court instructs that the court must first address the constitutional issue: whether the facts alleged, "'[t]aken in the light most favorable to the party asserting injury,' are sufficient to "show the officer's conduct violated a constitutional right.'" *Id.* at 197 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "Claims of excessive force are to be judged under the Fourth Amendment's objective reasonableness standard." *Id.* (internal quotation marks omitted) (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)). An officer cannot "'seize an unarmed, nondangerous suspect by shooting him dead,'" but if the officer has "'probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others,'" then deadly force is not "'constitutionally unreasonable.'" *Id.* at 197-98 (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)).

Assuming that the plaintiff has raised a genuine issue of material fact for trial on the constitutional issue, the court must then address the qualified immunity issue: whether it was clearly established that the officer was violating an individual's constitutional rights. *Id.* at 199.

> Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of law at the time of the conduct. If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subjected to liability or, indeed, even the burdens of litigation.

*Id.* at 198. "'The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in

the situation he confronted.'" *Id.* at 199 (quoting *Saucier*, 533 U.S. at 202). In an "obvious case," the general standards set forth by the Court may provide an answer "even without a body of relevant case law." *Id.*

The situation in *Brosseau* was not such a case, so the Court asked "whether, at the time of Brosseau's actions, it was 'clearly established' in this more 'particularized' sense that she was violating Haugen's Fourth Amendment right." *Id.* at 199-200 (quoting *Saucier*, 533 U.S. at 202). The Supreme Court examined cases that predated Brosseau's conduct, which were "relevant to the 'situation' Brosseau 'confronted': whether to shoot a disturbed felon, set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight." *Id.* at 200 (quoting *Saucier*, 533 U.S. at 202).

Reviewing three applicable cases, the Court found they "suggest[ed] that Brosseau's actions fell in the 'hazy border between excessive and acceptable force.'" *Id.* at 201 (other internal quotation marks omitted) (quoting *Saucier*, 533 U.S. at 206). "The cases by no means 'clearly establish[ed]' that Brosseau's conduct violated the Fourth Amendment." *Id.* Accordingly, the Supreme Court reversed the Ninth Circuit Court of Appeals and remanded for further proceedings.

### 1. Analysis Contained in the Report and Recommendation

In her Report and Recommendation, Magistrate Judge Hayes analyzed Plaintiff's Section 1983 claims as follows:

> Broussard testified that he was not trying to run over an officer or hurt anyone. He thought he was far enough off the road. (Broussard Dep. pg. 98-99). Deputy Crain testified that Broussard made a valid attempt to go around him (in the roadblock) and that he did not shoot at Broussard because he was not in fear. (Crain Dep. pg. 8). Trooper Cox also testified that she was not in fear for her life when Broussard passed her vehicle. (Cox. Dep. pg. 25).

6

> [Broussard] also argues that [he] was heading away from Woodard when he fired his gun. [Broussard's] argument is based on the measurement map of the scene made by Trooper Bobby Brinkerhoff, which shows that the oil trail left by Broussard's truck was three feet 2 inches from Bonner's vehicle [the first officer to fire] and three feet five inches from Woodard's vehicle [the second and final officer to fire]. [Broussard] argues that the angle of entry of the bullets show[s] that the second shot fired by Woodard was fired when Broussard's position was even with Woodard's and the third shot fired was fired after Broussard had passed Woodard.
>
> At the time of this incident, Broussard's identity was not known and he was only suspected of committing a misdemeanor traffic offense. There is no indication in the record before this court that Broussard endangered any civilian traffic during the pursuit or that Broussard was traveling above the posted speed limit. Thus, questions of fact remain as to whether Defendants' conduct was objectively reasonable. Therefore, it is recommended that Defendants' Motion for Summary Judgment (Doc. #22) be **DENIED**.

[Doc. No. 29, pp. 6-7].

The Report and Recommendation does not contain any discussion of the law on qualified immunity, and it appears that Magistrate Judge Hayes' recommendation to deny summary judgment is based solely on the finding that there are issues of fact as to the objective reasonableness of the officers' conduct.[2] This finding alone is insufficient to address the defense of qualified immunity. *See Brosseau*, 543 U.S. at 201 (Bryer, J.; Scalia, J.; and Ginsburg, J., concurring) ("I join the Court's opinion but write separately to express my concern about . . . the way in which lower courts are required to evaluate claims of qualified immunity under . . . *Saucier* . . . . As the Court notes, . . . *Saucier* requires lower courts to decide (1) the constitutional question prior to deciding (2) the qualified immunity question."); *see also Autin v. City of*

---

[2]The Report and Recommendation states that Defendants "contend that the claims against them should be dismissed on the grounds of qualified immunity," but characterizes the argument as being based on their reasonable belief that "their fellow officers were under an immediate threat of death or serious bodily injury." [Doc. No. 29, p. 4]. Defendants' argument on this point addresses only the constitutional issue, not qualified immunity.

7

*Baytown*, No. 05-20214, 174 Fed. Appx. 183, 185, 2005 WL 3556677 at *3 (5th Cir. 2005) ("After establishing that the violation of a constitutional right had been alleged, the district court failed adequately to address the second factor in the qualified immunity analysis-whether the right was clearly established. The court appears to have approached the question of objective reasonableness as though it were dispositive of both elements of the qualified immunity test. Each element must be addressed independently, however.") (citing *Saucier*, 533 U.S. at 204-05). Therefore, the Court DECLINES TO ADOPT Magistrate Judge Hayes' analysis.

### 2. Constitutional Question

First, the Court must address whether there are genuine issues of material fact whether Woodard's conduct violated Plaintiff's Fourth Amendment right to be free from the use of excessive force.

Defendants object to Magistrate Judge Hayes' analysis because she did not address the testimony of two officers. Deputy McFarland, the officer whose vehicle was last in the roadblock, stated that he "was bracing for impact of [Plaintiff's] vehicle hitting [his]" at the time Woodard fired. He later testified that he believed Plaintiff's vehicle would have struck his if Plaintiff had not veered away following the shots fired by Woodard. Lieutenant Charlie Dupuy of the Louisiana State Police also testified that the pursuit and tactics and use of deadly force by the officers were reasonable and in compliance with Louisiana State Police procedural policies.

Additionally, Defendants argue that the testimony of Deputy Crain and Trooper Cox that they were not in fear does not create a genuine issue of material fact for trial because they were in the two lead vehicles, Plaintiff had not begun to "fish-tail" at the time he passed them, and the officers admit that they did not see what happened after Plaintiff passed them.

The Court has conducted a review of the entire record, including a review of the videotapes and all testimony provided. Viewing the evidence in the light most favorable to Plaintiff, the Court agrees with Magistrate Judge Hayes' conclusion that there are genuine issues of material fact for trial as to whether the deadly force used in this case was objectively reasonable. While the Report and Recommendation failed to mention the testimony of Deputy McFarland and Lieutenant Dupuy, it is within the province of the jury to weight conflicting testimony after hearing all witnesses and considering the physical evidence. The Court also notes that officers had no information or reason to believe that Plaintiff was armed or had access to a weapon, but did have reason to believe that Plaintiff could not continue his flight indefinitely because his vehicle was malfunctioning.[3] Under these circumstances, there is a genuine issue of material fact whether Woodard had probable cause to believe that Plaintiff posed a threat of serious physical harm to any officer. Accordingly, the Court finds that Plaintiff has raised a genuine issue of material fact for trial on the constitutional question.

### 3. Qualified Immunity

Consistent with the Supreme Court's requirements, the Court now turns to the question of qualified immunity. In assessing Woodard's conduct, the Court considers the "totality of the circumstances." *Garner*, 471 U.S. at 8-9. The Supreme Court has identified important factors to

---

[3]Ouachita Parish Sheriff's Lieutenant Marc Mashaw ("Mashaw") testified that Plaintiff's truck was backfiring and making noises he had "never heard before." [Doc. No. 28, Exh. P-5, p. 11]. Mashaw radioed that the truck was having mechanical difficulties and did not look like it was going to make it much further. [Doc. No. 28, Exh. P-5, p. 11]. Louisiana State Trooper Kirk Knowles ("Knowles"), the officer who attempted to stop Plaintiff and who was in pursuit, testified that there were "loud pops" and "several sparks" coming from beneath Plaintiff's truck. [Doc. No. 28, Exh. P-4, p. 17]. Woodard testified that he received some information that the truck "might have been falling apart." [Doc. No. 22, Exh. 225, p. 13].

be considered, including the severity of the crime, whether the actor poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396.

In an obvious case, the Court can rely on the general standards provided in *Garner* and *Graham*, but in cases that are less clear, the Court must engage in a particularized review of the available case law at the time of the incident.

In this case, the Court finds that the answer, at least at the summary judgment stage, is clear and obvious and thus does not require particularized review of the cases relevant to the situation confronted by Woodard.

Defendants contend that they are entitled to qualified immunity because McFarland was in danger of death or serious bodily injury, and it was certainly not "clear to a reasonable officer that [the] conduct [of Woodard] was unlawful in the situation [he] faced." Defendants point out that Plaintiff's vehicle was in such close proximity to McFarland's vehicle, a fragment of glass from his headlight landed on the hood of McFarland's car after Woodard's first shot. While Plaintiff has testified by affidavit that he did not intend to hit any vehicle and that he did not point his vehicle at any of the officers' vehicles, Defendants argue that his testimony cannot raise a genuine issue of material fact when he was admittedly high on crack cocaine at the time of the pursuit. In support of their argument, Defendants have cited to *Brosseau* and suggested that, like the officer in that case, it was not clear to Woodard that he was violating Plaintiff's constitutional rights.

The Court disagrees. First, as pointed out by Plaintiff, this case is distinguishable from *Brosseau* because there are disputed issues of fact. At the summary judgment stage, even under

10

the qualified immunity standard, the Court is required to view those facts in the light most favorable to Plaintiff. *See Tarver v. City of Edna*, 410 F.3d 745, 753 (5th Cir. 2005) ("While the trier of fact might ultimately conclude that qualified immunity is warranted . . . Any credibility determination made between the officers' and [the plaintiff's] version of events is inappropriate for summary judgment."). If a jury were to believe Plaintiff's version of events, then Woodard was faced with the following situation: whether to use deadly force to seize a suspect who had possibly committed a misdemeanor traffic offense by having an expired temporary tag, fled from an officer in a chase that did not exceed the speed limit, was not endangering any civilians at the time of the shooting, was not endangering any officers, and with no information that the suspect was armed or otherwise dangerous. Under these circumstances, it is clear, under *Garner* and *Graham*, that Woodard's decision to use deadly force was a violation of Plaintiff's constitutional rights, and he is not entitled to summary judgment on the basis of qualified immunity.[4]

In reaching this conclusion, the Court expresses no opinion as to whether Plaintiff's version of events will be found credible by the jury, only that Plaintiff has raised sufficient issues of fact for trial. Defendants' Motion for Summary Judgment on the Section 1983 claims against Woodard is DENIED.

---

[4]Even if *Brosseau* were applied, the facts in this case are distinguishable from the "hazy" situation faced by officer Brosseau: (1) officers had no knowledge that Plaintiff was a convicted or "disturbed" felon or had any outstanding warrants, (2) officers did not believe Plaintiff to be armed (and he was not), (3) no civilians were present or in potential danger, and (4) no officers were on foot or unaccounted for.

Similarly, if this case required particularized review, the Court's consideration of the case law available at the time of the incident shows that Woodard's actions were a clear violation of Plaintiff's Fourth Amendment right. *See, e.g., Vaughn v. Cox*, 343 F.3d 1323 (11th Cir. 2003); *Abraham v. Raso*, 183 F.3d 279 (3rd Cir. 1999); *McCaslin v. Wilkins*, 183 F.3d 775 (6th Cir. 1999). In each of these cases, the circuit courts denied summary judgment, and, at least in *Vaughn* and *McCaslin*, the suspect's conduct was more egregious than that of Plaintiff.

## B. State Law Claims

### 1. Claims Against Bonner

Plaintiff has also asserted state law claims against Defendants of negligence, assault, battery, excessive use of force, and a violation of Louisiana Code of Criminal Procedure article 220. Defendants argue that any state tort claim against Bonner lacks causation because the shot fired by Bonner did not strike Plaintiff or even his vehicle. Plaintiff has not responded or opposed this argument.

As discussed above, it appears that, at the time he filed his Complaint, Plaintiff was unsure who fired the shots which actually struck him. However, since it is now undisputed that Woodard fired those shots, not Bonner, Defendants' Motion for Summary Judgment on the state law claims against Bonner is GRANTED. The Court's decision is subject to reconsideration should Plaintiff provide further briefing on this issue within ten (10) business days of the date the accompanying Judgment is filed.

### 2. Qualified Immunity Under State Law

Defendants also contend that Woodard is entitled to qualified immunity from liability on Plaintiff's state law claims under the discretionary function doctrine. Defendants cite Louisiana Revised Statute 9:2798.1, which provides as follows:

> Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary actions when such acts are within the course and scope of their lawful powers and duties.

In *Gregor v. Argenot Great Cent. Ins. Co.*, 851 So.2d 959 (La. 2003), the Louisiana Supreme Court explained that the object of Section 9:2798.1 "is to provide immunity from liability for offenses and quasi offenses of public entities [or their officers or employees] . . .

12

when the acts or omissions of the public entities [or their officers or employees] are policymaking or discretionary acts or omissions." 851 So.2d at 964. The plurality in *Gregor* rejected the Louisiana Supreme Court's previous jurisprudence in *Fowler v. Roberts*, 556 So.2d 1 (La. 1990), requiring that the discretionary act be "grounded in social, economic or political policy" and excepting from immunity any "operational acts." *Id.* at 967.

However, at least one Louisiana Court of Appeals has found inconsistencies in the *Gregor* ruling. In *McIntosh v. McElveen*, 893 So.2d 986 (2005), the Third Circuit stated:

> We note what seems to be somewhat an inconsistency in the plurality opinion in the *Gregor* decision. The plurality ... states that *Fowler v. Roberts*, 556 So.2d 1 (La. 1990), and its progeny are flawed because *Fowler* "went to federal jurisprudence to interpret a dissimilar Louisiana statute[5] to reach the conclusion that the immunity provided for in the Louisiana statute only exists when there is a discretionary act or function '*grounded in social, economic, or political policy.*' *Gregor*, 851 So.2d at 967 (emphasis added). The plurality noted that the quoted language is not found in the Louisiana statute. However, when ultimately deciding the issue of immunity, the plurality states the "decision in this case, that the warning over the oyster bar was in compliance with § 23:006-4 [of the sanitary code] was not a decision *grounded in social, economic, or political policy. It was operational negligence in enforcing the sanitary code.*" *Id.* at 968 (emphasis added). The plurality then goes on to cite the proposition [that when the government acts negligently for reasons unrelated to public policy consideration, it is liable to those it injures, a proposition from] ... one of the cases it stated was a flawed progeny of *Fowler*.

893 So.2d at 994 n.2.

Thus, it is unclear, at least to one Louisiana appellate court, whether *Gregor* has actually

---

[5]In the *Fowler* decision, the Louisiana Supreme Court used the test for determining immunity under the Federal Tort Claims Act: (1) whether a statute, regulation, or policy specifically proscribes the course of action and (2) whether the challenged action is grounded in political, economic or social policy. The Court explained in that case that "[d]iscretion exists only when a policy judgment has been made. Judicial interference in executive decisions involving public policy is restrained by the exception. Thus, the exception protects the government from liability only at the policy making or ministerial level, not at the operational level." 556 So.2d at 15.

13

changed the law interpreting the discretionary function doctrine.

Under either approach, Woodard is not entitled to qualified immunity. He argues only that he was afforded discretionary authority to use **"reasonable force"** to apprehend a fleeing suspect under both Louisiana Code of Criminal Procedure article 220 and the procedural orders adopted by the Louisiana State Police. The Court has found that there are genuine issues of material fact for trial as to whether Woodard's use of deadly force was objectively reasonable. Therefore, Defendants' Motion for Summary Judgment on the state law claims against Woodard is DENIED.

### III. <u>Conclusion</u>

For the foregoing reasons, the Court ADOPTS IN PART and DECLINES TO ADOPT IN PART the Report and Recommendation [Doc. No. 29] of Magistrate Judge Hayes. Defendants' Motion for Summary Judgment [Doc. No. 22] is GRANTED IN PART and DENIED IN PART. To the extent that Defendants seek summary judgment on the claims against Bonner, the motion is GRANTED, and all claims against Bonner are DISMISSED WITH PREJUDICE. To the extent that Defendants seek summary judgment on the claims against Woodard, the motion is DENIED.

MONROE, LOUISIANA, this 20 day of November, 2006.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE